D. C. HILL, *Appellant*, v. BRAXTON BEACHAM AND BERTA BEACHAM, *Appellees*.

Opinion Filed April 5, 1920.

Petition for Rehearing Denied June 26, 1920.

1. Where relief in equity is sought upon the ground that alleged relations of the parties and the transactions growing out of them charged certain properties with a trust for complainant's benefit and the answer denies such relations and transactions, the burden rests upon complainant to prove such allegations of his bill.

2. Where an alleged trust is based upon parol agreements, the evidence to support such trust must be so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust.

3. Unless the chancellor's findings appear clearly to have been erroneous, his decree based upon such findings will not be disturbed.

4. Where relief is asked based upon the existence of a trust in real property growing out of alleged partnership relations between the parties and the chancellor finds the evidence to be insufficient to support the allegations as to the existence of the partnership, the relief prayed for should be denied.

An Appeal from the Circuit Court for Orange County, James W. Perkins, Judge.

Decree affirmed.

*Jones & Jones,* for Appellant;

*Robinson & Beardall, Davis & Giles* and *Dickenson & Dickenson,* for Appellees.

ELLIS, J.—In December, 1908, D. C. Hill began a suit in the Circuit Court for Orange County against Braxton Beacham and his wife, Berta. During a period of five years five amended bills were filed, and the last, which was filed in December, 1913, presented the case of the complainant, which was finally submitted to the court and upon which the decree appealed from rests.

The bill of complaint is a lengthy document and it is unnecessary to set it out in detail in this opinion.

It in substance alleges that the complainant in the "year 1901 and in January, 1902," (these dates were amended after proof to read 1902 and 1903), being well acquainted with orange grove property and lands suitable for such enterprise and having information as to the residences and postoffice addresses of the owners, and possessing much experience in the cultivation of orange groves and orange culture he was qualified by reason of such knowledge to make the best selections of "groves and lands and to make the best bargains for their purchase."

He went to the defendant Braxton Beacham with a statement that he possessed such information and experience and informed Beacham of the location of cer-

tain desirable properties, among which were the so-called "McGregor," "Garvin" and "Hower" properties, which are particularly described in exhibits to the bill of complaint. That the complainant and defendant then entered into an agreement of partnership as follows: That the complainant should negotiate and arrange for the purchase of such properties and at the most favorable prices and terms; that Beacham would furnish the purchase money; that the deeds should be made to Beacham to be held for the joint use and benefit of himself and the complainant in carrying out the partnership agreement, and for the "further reason for securing the said defendant for the amount of all purchase money and other monies expended and to be expended by him for the supplies hereinafter mentioned as agreed upon under the terms of said partnership arrangement." That the complainant should "attend, superintend and work and cultivate and care for all orange groves upon the aforesaid properties so purchased, devoting thereto his time and experience and all of the working force at his command upon his home place, consisting of men and animals, to-wit: three men, including complainant, and two horses and all necessary farming implements for the proper conduct and cultivation of said several properties;" that all other expenses of fertilizers and other labor were to be paid for by Beacham; "that the services, knowledge and skill aforesaid of complainant were to be contributed against the money and the use of the money of said defendant in his behalf; that the defendant should be paid back every cent of his expenditures for the purchase of all the properties and improvements of same out of the products of the said groves to be worked and attended by complainant; that when this was accomplished and full payment

was made to the defendant as aforesaid for all sums of money expended by him, the said partnership assets above described as to the McGregor and Garvin properties and all other properties acquired under this partnership should be equally divided between complainant and defendant Braxton Beacham share and share alike, and the complainant receive from the said defendant a full and clear title to the one-half undivided interest of all the property theretofore held by the defendant for the use and benefit of the complainant and the defendant under the said partnership agreement as his share of the profits of same, and that all the money paid out by the said Beacham upon all the properties purchased for partnership purposes was to be first paid back and the profits accruing on sale of said properties were to be aqaully divided.''

It was also alleged that the complainant discharged all the duties which devolved upon him under the agreement, which was oral, and that he succeeded in making the properties so acquired repay all of the defendant's expenditures under the partnership agreement in three years.

That they acquired the McGregor property, but the defendant unknown to the complainant procured the "deed to be made into the name of his wife, Mrs. Berta Beacham," and that such act was done to defraud the complainant. That the "Garvin" property was also acquired by the defendant and complainant under and in pursuance of the agreement which was also unknown to the complainant, put in the name of defendant's wife with the purpose of defrauding the complainant. That the "Hower" property was acquired by complainant and defendant under their agreement, sold 160 acres of it, divid-

ed the profits, but that the defendant still retained 40 acres of the tract, which he refuses to divide with the complainant, or account for. That many other tracts of land were acquired by them under their agreement; these were listed in Exhibit "E." That they were sold at a profit of $600.00, which was equally divided between them. That other lands were purchased as described in Exhibit "G" and sold, but the defendant has not accounted to complainant for his share of the profits which are alleged to be about $515.00. The bill then give in detail the transaction by which the "Hower" property was acquired, which seems to have been in December, 1905.

It is alleged that during the period covered by the agreement between the defendant and complainant he performed all the acts required by the agreement on his part to be performed, he received no compensation for his labor, superintendence, skill and experience, nor for labor supplied by him; that the defendant marketed the crops, received large sums of money therefrom, had recouped all outlays for purchase price and expenses and refused to account to the complainant for his share of the profits. Figures are given to show the profits derived from the different properties under the agreement of the parties. It is alleged that complainant "in carrying out his part, he continued to labor for more than three years, without compensation, the defendant accepting the said services and accepting the profits of the properties and paying complainant nothing for his skill and labor in accordance and in keeping of said partnership arrangement and that he should not do so until he, the said defendant, had fully repaid his entire outlay, when they were to divide the said partnership assets and profits, if any, share and share alike, the said de-

fendant pretending that he had not been so repaid;" that the properties have enhanced in value; that there has been no settlement of the partnership business though the complainant has frequently demanded a settlement from the defendant; that the defendant has possession of all the properties.

The prayer is for an accounting of the partnership affairs, that the defendant be required to pay to the complainant the amount found to be due, that Mrs. Berta Beacham be declared to hold the properties described as being in her name, in trust for the complainant and defendant Braxton Beacham, and subject to the partnership agreement; that Braxton Beacham be declared to hold the other properties mentioned and unaccounted for in trust for the partnership and that complainant be decreed to be entitled to his one-half portion of the profits, and for general relief.

A demurrer by defendants was interposed to this bill in February, 1914, and Mrs. Beacham interposed a separate demurrer also. In February, 1915, these demurrers were overruled. An appeal was taken and the orders were affirmed. See Beacham v. Hill, 70 Fla. 441, 70 South. Rep. 1019.

In March, 1916, the defendant Braxton Beacham answered the bill, denying the alleged partnership agreement and all the allegations of the bills that the various transactions were made in pursuance of any such agreement. He averred that the McGregor property was purchased by him through his attorneys and that the deeds were made to Mrs. Beacham, and all the proceeds of the property have gone to her. He denied that any of the alleged purchases of land were made pursuant to any

partnership agreement between him and the complainant, and averred that no such agreement existed. That as to the Garvin grove he promised complainant if he would "do in proper manner all work on the grove," to give him a fourth interest after defendant had been reimbursed for all money invested and ten per cent. interest, but it is averred that complainant failed to carry out the agreement. It is also averred that the agreement was made after defendant had purchased the property. That during the years when complainant pretended to be in charge of the grove the defendant paid for all work and fertilizers, and in 1905 complainant abandoned the grove and placed some one else in charge. That as to the "Hower" lands they were purchased upon a verbal agreement between complainant, and defendant to the effect that the former would locate "tax lands in Section of Forest City" that defendant would buy same if he approved the character of same; that the lands should then be sold, defendant reimbursed with 10 per cent. interest and the remainder should be divided between them. It is averred that under such agreement other properties were purchased and the complainant owes the defendant a large sum of money on account of one piece of property which was sold and the purchase money paid to complainant who has never accounted for it. It is averred that as to the groves mentioned in the bill the "complainant has never had any connection directly or indirectly with these properties, nor did he ever do any work in any way upon them or have any work done on them." He denied that complainant has any interest in any of the lands described in the exhibits. The answer contains many averments and denials in particular of the allegations of the bill, and was a complete denial

specifically and generally of the alleged equities of the bill.

Mrs. Beacham also answered the bill confining her averments and denials to the Garvin and McGregor properties which she averred were acquired by her, and there was no agreement, written or oral, with the complainant affecting the same. Her answer disclaimed any knowledge of the other allegations of the bill.

Replications were filed and a Special Master appointed to take the testimony and report the same.

In February, 1919, the Chancellor rendered a final decree dismissing the bill of complaint upon the finding that the complainant had not sustained the equities of the bill of complaint. From this decree the complainant appealed.

There are fourteen assignments of error which question the correctness of the Chancellor's rulings upon the admission of certain evidence, his finding as to the equities of the case, and as to other matters which do not appear clearly to be involved.

The ninth assignment questions the correctness of the decree in so far as it affects the properties alleged in the bill to be in the name of Mrs. Beacham, upon the ground that there was no testimony by Mrs. Beacham denying the allegations of the bill. Mrs. Beacham's answer was a complete denial of the allegations of the bill in so far as they affected the two properties owned by her, namely, the "Garvin and "McGregor" groves. That she did not testify in the case is no ground for reversing the decree so far as those properties are concerned. To have charged those properties with a trust in her name for the benefit of a partnership alleged to have existed

between the complainant and defendant it was necessary for the complainant to have established the allegations of his bill as to Mrs. Beacham's part in defrauding the complainant as well as the defendant Braxton Beacham's fraudulent conduct in these transactions. The burden was upon the complainant. The allegations of his bill did not place any burden upon Mrs. Beacham, who owned the two properties, to prove her honesty and good faith in acquiring them. She answered the bill. The burden then rested upon the complainant to prove the allega- tions by which he sought to charge the property with a trust. See 16 Cyc. 370-402; Griffith v. Henderson, 55 Fla. 625, 45 South. Rep. 1003; Marvin v. Hampton, 18 Fla. 131; Watson v. Bair, 73 Fla. 255, 74 South. Rep. 317; Nims v. Nims, 23 Fla. 69, 1 South. Rep. 527; Lofton v. Sterrett, 23. Fla. 565, 2 South. Rep. 837; Parramore v. Hampton, 55 Fla. 672, 45 South. Rep. 992.

As to the propeties acquired by Mrs. Beacham, the complainant alleged certain facts upon which he prayed the court to declare a trust. The bill alleged that the matter rested in parol. The evidence, therefore, was required to be so clear; strong and unequivocal as to remove from the mind of the Chancellor every reasonable doubt as to the existence of the trust. See Geter v. Simmons, 57 Fla. 423, 49 South. Rep. 131; Johnston v. Sherehouse, 61 Fla. 647, 54 South. Rep. 892.

We find no basis in the record for the tenth assign- ment, which the appellant says arose at the final hearing on some question involving the statute of frauds. The eleventh assignment asserts that the decree was framed "after argument of counsel for the defendants upon ad- judicated points" in disregard of the decision of this court. The twelfth assignment charges that the Chan-

cellor at the final hearing "considered the demurrers of the defendants" which had been overruled and such orders sustained by this court. These questions seem to have no basis in the record. The Chancellor at the final hearing, so the record shows, decided that the complainant had "not sustained the equities as alleged in his bill of complaint and that the equities are with the defendants." The decree entered was that the bill should be dismissed.

The first question presented is whether such finding of fact by the Chancellor and the decree entered thereon appears from the record clearly to have been erroneous. See Johns v. Bowden, 72 Fla. 530, 73 South. Rep. 603; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Simpson v. First Nat. Bank of Pensacola, 74 Fla. 539, 77 South. Rep. 204.

What may have transpired at the final hearing, what agreements were made, or what reasons were given by the judge for his decisions are not part of the record. Nor is the court concerned with them. If the decree is justified because of insufficient evidence to satisfy the Chancellor of the existence of the partnesrhip between the complainant and defendant, it must be affirmed, notwithstanding what his utterances may have been at the hearing. We will, therefore, consider the seventh, eighth, thirteenth and fourteenth assignments of error which present the question of the correctness of the decree. We agree with counsel for appellant that the law of the case as presented by the bill of complaint was settled on the first appeal. If the allegations of the bill of complaint were established the complainant would be entitled to an accounting. We have examined the testimony of the witnesses as shown by the record, and while there

may be some slight evidence of the existence of a co-partnership between the complainant and defendant, it is all perfectly capable of explanation upon another theory than that of the existence of a partnership between Mr. Hill and Mr. Beacham. The Chancellor did not regard the testimony of the complainant and his witnesses as sufficient to establish the allegations of the bill and in so far as the existence of any fraud upon Mrs. Beacham's part is concerned, to affect the title in her to the McGregor and Garvin properties, there is no evidence whatsoever. We do not agree with counsel that there was no denial of the alleged fraud. The answers of both Mr. Beacham and his wife deny the existence of any relations with Mr. Hill, out of which it is charged the alleged fraud grew. A denial of the alleged fiduciary relations was a denial of the fraud. If there was no such agreement between the parties as alleged then there was no fraud in Mrs. Becham taking the title to the property in her own name. It does appear from the answer of Beacham that he paid the purchase price of the two properties and gave them to his wife. He also admits that he promised the complainant to give him a fourth interest in the grove provided he did certain things, which he averred the complainant failed to do. But that agreement did not constitute a partnership agreement. As to whether any work was done on the properties, the Chancellor decided that issue with the defendants. We do not find in the record sufficient evidence to establish the existence of the partnership, which the complainant alleged existed, over the Chancellor's findings that it did not exist. The testimony as to the tax lands, pine timber lands and other properties shows that there was between the parties an agreement of some kind whereby

one should locate the lands, the other pay for them if he deemed proper to do so, and that after reimbursing himself for all expenditures from the proceeds of the sale of the properties the residue should be divided between them.

The answer admits the allegations of the bill as to the contract between the parties concerning the location of the tax lands, but the Chancellor found that all settlements had been made. We are unable to say that the evidence shows clearly that he erred. Following the unbroken line of decisions of this court upon this rule we think that the decree must be affirmed, so the decree is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J.. coicur.