L. W. SHEPPARD v. JOHN N. CHERRY, et al.

159 So. 661.
Opinion Filed February 25, 1935.

*Cone & Chapman,* for Appellant;

*Guy Gillen, J. E. Gillen* and *Wilson & Wilson,* for Appellees.

DAVIS, J.—After evidence was taken and reported on final hearing a final decree on the merits was entered by the Chancellor below finding certain issues of fraud, insanity, and lack of consideration in a mortgage foreclosure case in favor of the defendants in the case. The complainant has appealed from the dismissal of his bill, assigning as error that the probative force and legal effect of the evidence as a whole requires a reversal of that finding and the entry of a decree for complainant.

Suit was brought by L. W. Sheppard, as alleged mortgagee, against certain named defendants who claimed title to the mortgaged land as having been derived by them from the alleged mortgagor, Amanda Alexander. After the purported execution of the mortgage on the land, amounting to $1,500.00, the alleged mortgagor, Amanda Alexander, died intestate. The defendants who represent her interest filed their answer to the bill in which they denied the execution of the note and mortgage which is the subject of this suit;

denied that the complainant, L. W. Sheppard, had ever lent to Amanda Alexander $1,500.00 during her lifetime, or any other sum of money, and denied that at the time of the alleged execution of the mortgage by Amanda Alexander that she was indebted in the least to the complainant Sheppard.

Defendants further alleged in their answer that at the time of the purported execution of the note and mortgage by Amanda Alexander, said Amanda Alexander was mentally and physically incapable and incompetent in law and in fact and unable to attend to the ordinary affairs of life; that she was at that time *non compos mentis* to such an extent as to be incapable of comprehending the subject matter of said note and mortgage, their nature or probable consequences, and further that the note and mortgage sought to be foreclosed was a forgery perpetrated by one Ed Vaughn, and therefore unforecloseable.

The evidence in the case makes a strong showing to the effect that one Ed Vaughn perpetrated a gross fraud upon Amanda Alexander in the execution and delivery of the mortgage here in controversy. What is shown is that Vaughn was in effect a self-appointed agent acting completely without authority in the premises, and that even if Sheppard, the mortgagee, was himself acting in perfect good faith (which on the record is at least doubtful in some particulars), that he had no right to blindly rely on Vaughn's representations and to believe from them that Vaughn was duly authorized by Amanda Alexander to secure the mortgage, deliver it to him, accept the money and handle as he did, every detail of the transaction, some of which details it appears transpired some time after Amanda Alexander's death as attested by records of the bank deposits.

That Amanda Alexander, at the time she is said to have

authorized her signature by mark to the mortgage (although she is shown to have been able to write her name) was weak and infirm in mind and body, handicapped by the ravages of old age, ill health and approaching death, and that she was to a certain extent unbalanced, irrational and irresponsible, although not legally insane or adjudged so to be, is conclusively established by the evidence.

Coupled with the foregoing circumstance of the execution of the note and mortgage by one admittedly so afflicted, if in fact she did execute and acknowledge it as contended, is the showing that Sheppard, the mortgagee, dealt directly with Vaughn in the matter, gave his check to Vaughn, who actually endorsed it as purported agent for Amanda Alexander and proceeded to use it as he pleased. It is a conclusion almost inescapable that Amanda Alexander never received any part of the money herself and that Vaughn was the actual if not the nominal actor in all that took place with regard to procuring of the money and the giving of the alleged mortgage, and that Sheppard must have known the nature of what Vaughn was doing.

The burden of proof was undoubtedly on the defendants in the case. So the only proposition required to be decided by the Chancellor was whether or not the defendants successfully carried the burden resting upon them of showing not only that a fraud had occurred, but that Sheppard, the mortgagee, was a party to such fraud and therefore bound by its consequences. From the vigorously expressed findings of the Chancellor as set forth in his final decree it is evident that he was completely convinced that Sheppard and Vaughn had connived in the transaction to perpetrate a fraud upon Amanda Alexander, an aged and infirm negro woman, at a time she was a physical and mental invalid.

Fraud is never presumed, but may be inferred from the

facts and circumstances. The burden of proving it is upon him who asserts it, but a wide latitude is allowed in the manner of its proof. To set aside a mortgage on the ground of fraud or duress practiced or exercised in its procurement, such fraud or duress must be participated in to some extent by the mortgagee. Smith v. Commercial Bank, 77 Fla. 163, 81 Sou. Rep. 154, 4 A. L. R. 862.

According to the weight of authority, even complete insanity of one of the parties to a contract is not sufficient reason for setting it aside where it was entered into in good faith, without fraud or imposition, for a fair consideration, without notice of the infirmity and before an adjudication of insanity, and has been executed in whole or in part, unless the parties can be restored to their original position. Lancaster County Bank v. Moore, 78 Pa. St. 407, 21 Am. Rep. 24; Coburn v. Raymond, 76 Conn. 484, 57 Atl. Rep. 116, 100 Am. St. Rep. 1000; 14 R. C. L. par. 40, page 584, and cases cited.

However, mental weakness, even though it be but a very modified form of incapacity, when coupled with circumstances of fraud, undue imposition, duress, over exercise of authority, inadequacy of consideration, or the like, may furnish sufficient ground for equitable interference. Douglas v. Ogle, 80 Fla. 42, 85 Sou. Rep. 243.

While mere mental weakness will not authorize a court of equity to set aside a deed if it does not amount to inability to comprehend the effect and nature of the transaction, and is not accompanied by evidence of imposition or undue influence (Charke v. Hartt, 56 Fla. 775, 47 Sou. Rep. 819), yet where a contract is executed on an insufficient consideration by one enfeebled in body and mind, a presumption of fraud arises, the burden, however, to establish the predicatory conditions to the presumption being

on him who would avoid the contract. Douglass v. Ogle, *supra*.

It cannot be fairly said that the evidence produced by the defendants below was sufficient to establish the complete insanity of Amanda Alexander at the time of the happenings here complained of. This is so because she was never adjudged insane and the testimony of the attendant doctor is to the effect that she was suffering from diabetes and other serious ailments, but possessed a normal mind for one in her condition of health, up until about three days before her death.

The evidence is of such character, nevertheless, that an appellate court cannot say after a review of all of it that the Chancellor was wholly unwarranted in his findings that Sheppard and Vaughn had connived with each other to have perpetrated an imposition and fraud on a mental and physical invalid who is shown to have never received any benefit from the mortgage transaction carried out in her name and ostensibly as her act, but in reality as the act of said Vaughn as the motivating spirit behind it all. So the findings of the Chancellor in the premises ought not to be disturbed under the well settled rule governing such state of the case. Kirkland v. Hutto, 85 Fla. 82, 95 Sou. Rep. 429; Kreher v. Morley, 84 Fla. 121, 92 Sou. Rep. 686.

Affirmed.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.
ELLIS and BROWN, J. J., dissent.